**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID ARANOVSKY,** *Plaintiff,*<br><br>**v.**<br><br>**TEMPLE UNIVERSITY et al.,** *Defendants.* | **Civil No. 25-6797** |

**MEMORANDUM**

**Costello, J.** **July 30, 2026**

Pro se Plaintiff David Aranovsky believes he discovered a revolutionary mathematical theory. Plaintiff widely disseminated his writings on this theory to various scholars and academic institutions. Plaintiff's work did not receive the traction or support from the academic community he hoped for. He now alleges that Defendants Krishan Canzius, Temple University, Google, Medium Corporation, and Academia (together, "Defendants") conspired to suppress his speech about his mathematical theory by, among other things, impersonating a police officer, restricting his ability to post his theories online, and de-prioritizing his self-published writings on search engine results. Plaintiff brings a variety of state and federal claims against Defendants stemming from this purported conspiracy, including deprivation of his First Amendment rights under Section 1983, a civil RICO claim, and a state-law claim for tortious interference with prospective economic advantage. Each Defendant moves to dismiss all claims.

Plaintiff's claims are wholly incredible. They rest entirely on Plaintiff's unfounded and attenuated speculation and are devoid of any factual basis. Federal courts lack the power to entertain such claims under the substantiality doctrine. For these reasons, the Court will dismiss this action in its entirety.

## I. BACKGROUND

### A. Plaintiff's Academic Endeavors

Plaintiff alleges that he discovered a mathematical theory called "Geometric Lattice," which he describes as "the discrete substrate of reality defined by the exact relationships[,]" and "the exact geometric derivation of all fundamental constants from the tetrahedral-octahedral honeycomb lattice[.]" ECF No. 12 ¶ 6. Plaintiff believes his work constitutes an "historic discovery that defines the polyhedral substrate of physical reality." *Id.* ¶ 36.

Plaintiff submitted his work to a variety of math and physics journals but was not selected for publication. *See* ECF No. 1-1 at 4 (email from one journal, "Mathematics of Computation," explaining that Plaintiff's article was rejected for, among other reasons, "[i]nappropriate language"). Plaintiff then posited his theories via email to over 500 mathematics faculty members and academic institutions, including Defendants Canzius and Temple University. ECF No. 1 ¶ 8; ECF No. 1-1 at 1-4 (exhibits to Complaint, including Plaintiff's emails to academic institutions, sent between September 2, 2025 and September 22, 2025). These emails contained fantastical, hyperbolic, and threatening language such as warnings that the recipients can either accept Plaintiff's theories or "[r]ide the rooftops of your institutions' Tower of Babel down to ground zero." ECF No. 1-1 at 2.

### B. The Alleged Phone Call

On September 10, 2025, Plaintiff allegedly received a call from an individual who identified himself as "Detective Smith with the Police." ECF No. 1 ¶¶ 12-13. The caller told Plaintiff that he needed to stop emailing professors about his mathematic theories, "or you are gonna get arrested." *Id.* ¶¶ 13-14. Plaintiff alleges that this caller was actually Defendant

Krishan Canzius, a mathematics professor at Temple, impersonating a police officer. *See id.* ¶ 16; *see also* ECF No. 12 ¶ 11.

Plaintiff draws this conclusion based on a series of dubious assumptions. First, Plaintiff cites his own speculation that the voice on the call "distinctly matches Defendant Canzius's voice as heard in his public YouTube videos." ECF No. 1 ¶ 16. More specifically, Plaintiff contends that "[t]he caller's voice was distinctly African American and exhibited distinctive educated, authoritative qualities matching Professor Canzius's public speaking videos[,]" and Canzius is "the only African-American male mathematics professor at Temple University." ECF No. 1-1 at 8; ECF No. 1 ¶¶ 16-18. Second, Plaintiff alleges that this purported phone call took place twenty-nine minutes after some unidentified person affiliated with Temple viewed his profile on his Academia webpage, which he surmised must have been Canzius. *See* ECF No. 1-1 at 5, 8; ECF No. 1 ¶¶ 16-18. Third, Plaintiff alleges that Canzius had the "motive" to make this call "to threaten and suppress Plaintiff's . . . speech and his public documentation of a scientific discovery that fundamentally challenges established academic doctrine." ECF No. 1 ¶ 18; ECF No. 12 ¶ 11.

From these assumptions, Plaintiff speculates that there is an "inescapable and undeniable chain of evidence pointing to Defendant Canzius as the perpetrator." ECF No. 1 ¶ 18. Notably, Plaintiff does not attach any official documentation or information corroborating that this phone call ever took place or showing that there was a legitimate police investigation.[1]

---

[1] Plaintiff attaches an "incident information slip" he claims to have submitted to the 121st precinct of the N.Y.P.D., but this self-scanned form does not contain his name, does not mention Temple or Canzius, and does not describe the alleged phone call. *See* ECF No. 1-1 at 10. The "crime" is listed as "crim impersonation." *Id.* The form is dated October 28, 2025, over a month after the alleged phone call, but Plaintiff adds text below the exhibit saying the report "was actually filed prior week, NYPD closed the case[.]" Plaintiff also attaches an exhibit titled "FBI Complaint Confirmation" but it is just a slip of paper on which Plaintiff seemingly typed the

Plaintiff also allegedly reported the call to Temple University on September 29, 2025, but Temple "refus[ed] to conduct any investigation or disciplinary action." ECF No. 12 ¶ 12. Plaintiff subsequently wrote an article about this series of events entitled "Aranovsky v. Canzius—A Felony That Collapses the Temple of Babel," which he self-published on Medium.com on November 13, 2025. *Id.* ¶ 13.

**C. The Purported Conspiracy**

According to Plaintiff, what happened next was a coordinated campaign by Defendants to suppress his speech about his mathematical discoveries and the alleged impersonation incident.

1. <u>Google</u>

Defendant Google LLC is a corporation whose services include a search engine. ECF No. 61-1 at 3. Plaintiff alleges that at some unspecified time after he published his article on Medium, he performed a search on Google for "Krishan Canzius," and his article appeared fourth in the search engine results. ECF No. 12 ¶ 13. At another unspecified time after the first search, Plaintiff alleges he performed a second search on Google for "Krishan Canzius," but the article did not appear in the results. *Id.* ¶ 15.

Plaintiff alleges that his article was no longer visible in Google's search results because "Temple University contacted Google LLC and requested the removal of the article from search results" and Google manually de-indexed the article. *Id.* ¶¶ 14-15. Plaintiff does not allege any details about who at Temple spoke with whom at Google, when or how the purported manual de-indexing took place, "or why Google would have any interest in removing an article from its

---

following: "Complaint filed with FBI September 10, 2025. Verified as received but unassigned by FBI field Office . . . No case number provided despite requests." *Id.* at 9. Finally, Plaintiff attaches what appears to be a screenshot of a Google Virtual Assistant chat recording a call, with the response stating, "[p]olice related incident." *Id.* at 6-7. It is unclear what exactly this document is or purports to demonstrate.

search results at the behest of Temple[.]" ECF No. 61-1 at 3. Plaintiff claims that Google's actions caused him $137,037,071.59 in damages, which he alleges he determined from "the geometric derivation of the Fine Structure Constant." ECF No. 12 ¶¶ 36-38.

2. Medium

Defendant Medium is "the business entity that operates medium.com, a website that hosts user-generated written content, consisting primarily of articles, stories, and blogs written by its users." ECF No. 74-1 at 7. Plaintiff alleges that Medium "specifically target[ed] Plaintiff" by imposing a two-article per day posting limitation. ECF No. 12 ¶ 10. Plaintiff reached out to Medium to inquire about this limitation. Medium allegedly "refused to identify the policy source when challenged," *id.*, but stated that it was "experimenting with" daily rate limits." *Id.* ¶ 27.

However, according to Plaintiff, "Medium's undocumented rate limit was imposed at the direction of Temple and/or Google to restrict Plaintiff's ability to publish documentation" about his claims against Temple and Canzius and his mathematical discoveries. *Id.* ¶ 30. Like his allegations against Google, Plaintiff does not allege facts explaining who at Medium, Temple, and Google coordinated with one another, when this coordination took place, or what incentive Medium had to limit Plaintiff's posting abilities at the direction of Temple or Google. *See generally* ECF No. 1; ECF No. 12.

Plaintiff then threatened litigation against Medium, at which point Medium ceased communications with Plaintiff and instructed him to have his counsel direct all further contact to Medium's legal department. ECF No. 12 ¶ 28.

3. Academia

Defendant Academia "is an online platform and social networking site designed for academics and researchers to share, discover, and track the impact of research papers and scholarly works." ECF No. 70-2 at 2.

Plaintiff maintains a profile on Academia which he uses to host documents related to this litigation and his mathematical discoveries. ECF No. 12 ¶ 20. Plaintiff alleges that, sometime in January 2026, he noticed that certain documents visible to him on his profile were not visible to members of the public. *Id.* ¶ 21. He contends that "[t]his differential visibility" amounts to shadow banning—a practice employed by media platforms to limit the visibility of a particular user's content by others on the platform. *Id.* ¶ 22; ECF No. 70-2 at 2 n.3.

Plaintiff alleges that Academia "implemented this shadow ban at Google's/Temple's direction" which he characterizes as "participation in the state-actor conspiracy." ECF No. 12 ¶¶ 23-24. Again, Plaintiff does not explain who from Academia coordinated with whom from Google or Temple, when or how this purported conspiracy took place, and why Academia would have any incentive to "shadow ban" Plaintiff's work at the behest of Temple or Google. *See generally* ECF No. 1; ECF No. 12.

**D. Plaintiff's Lawsuits**

Plaintiff filed suit against Temple and Canzius on October 31, 2025. *See generally* ECF No. 1. This lawsuit stems from Canzius's alleged impersonation of a police officer and Temple's alleged cover-up. *See id.* He brings claims for First Amendment retaliation under Section 1983, conspiracy to violate civil rights under Section 1985, intentional infliction of emotional distress, and negligent supervision. *See id.* ¶¶ 22-37.

Plaintiff filed a second suit against Temple, Google, Academia, and Medium on January 5, 2026. *See generally* ECF No. 12. This lawsuit stems from the purported conspiracy between Defendants to suppress Plaintiff's speech concerning the alleged impersonation incident and his mathematical discoveries. *See id.* He brings claims for deprivation of civil rights and conspiracy under Sections 1983 and 1985, civil RICO under 18 U.S.C. § 1962(c), and a state-law claim for tortious interference with prospective economic advantage. *See* ECF No. 12 ¶¶ 39-54, 60-65. Plaintiff seeks $137,037,071.59 in damages, which he claims to be "the value of the [mathematical] discovery itself[.]" *Id.* ¶ 65.

Plaintiff also brings what he fashions as a "claim" for declaratory judgment under 28 U.S.C. §§ 2201-2202. *Id.* ¶¶ 55-59. He seeks a declaratory judgment from this Court that Google, Academia, and Medium are not subject to Section 230 of the Communications Decency Act, a federal statute which immunizes hosts of third-party speech from liability for exercising editorial discretion on their platforms. *See* 47 U.S.C. §§ 230(c), (e)(3).

The Court consolidated the actions pursuant to Federal Rule of Civil Procedure 42. *See* ECF No. 38 at 1 n.1. All Defendants moved to dismiss. *See generally* ECF No. 19 (Temple and Canzius's motion); ECF No. 61-1 (Google's motion); ECF No. 74-1 (Medium's motion); ECF No. 70-2 (Academia's motion). Plaintiff opposed each motion.[2]

---

[2] Plaintiff did not file formal oppositions to Google's, Medium's, or Academia's motions to dismiss, but instead submitted a series of filings with various titles such as "Notice of Breaking News: Google Surrenders Section 230 Shield to Their Destroyer" (ECF No. 63) and "Notice of Prophecy—the Reckoning of the Tower of Babel" (ECF No. 65). In the spirit of construing pro se filings liberally, the Court is considering the legal arguments raised in these filings as Plaintiff's oppositions to Defendants' motions.

## II. LEGAL STANDARD

"Under the 'substantiality' doctrine, 'federal courts are without power to entertain claims otherwise in their [subject-matter] jurisdiction if they are 'so attenuated and insubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly insubstantial,' or 'no longer open to discussion.'" *Allen v. Am. Fed'n of Gov't Emps. AFL-CIO*, 276 F. App'x 197, 199 (3d Cir. 2008) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Allegations satisfying this standard include those that make out "fantastic scenarios" that "lack[] any arguable factual basis." *DeGrazia v. FBI*, 316 F. App'x 172, 173 (3d Cir. 2009).

The "standard for dismissing a federal claim as wholly insubstantial is 'especially high.'" *Whiting v. FBI et al.*, No. 25-3259, 2026 WL 1864308, at *1 (3d Cir. June 29, 2026) (quoting *Hill ex rel Republic First Bancorp Inc. v. Cohen*, 40 F.4th 101, 111 (3d Cir. 2022)). Nevertheless, if the Court views the well-pleaded facts in the light most favorable to the plaintiff, and his claims are still "so insubstantial as not to present a federal case or controversy," dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1). *Id.*; *see also VanLoan v. Nation of Islam*, 20cv6112, 2021 WL 3630481, at *1 (E.D. Pa. Aug. 16, 2021), *aff'd*, No. 21-2699, 2022 WL 3043152 (3d Cir. Aug. 2, 2022) ("pursuant to Rule 12(b)(1), a 'claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is . . . wholly insubstantial and frivolous'") (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006)).

## III. DISCUSSION

Plaintiff's claims satisfy the standard for dismissal under the substantiality doctrine. All of Plaintiff's claims are based on his own unfounded speculation that Temple professor Krishan Canzius called him impersonating a police officer and threatening to restrict his speech.

Plaintiff's only bases for this conclusion are (1) Plaintiff's own "voice analysis" and speculation that the person on the phone sounded to him "distinctly African-American"; (2) Canzius is Temple's only African-American mathematics professor and had the "motive" to make the call; and (3) someone with a Temple email viewed his Academia profile around the time he supposedly received the phone call. *See supra* at 3. These claims are "so attenuated and insubstantial as to be absolutely devoid of merit[.]" *Allen*, 276 F. App'x at 199. Plaintiff's belief that Canzius impersonated a police officer is nothing more than a "fantastic scenario[]" and lacks "any arguable factual basis." *See DeGrazia*, 316 F. App'x at 173. Because these fanciful allegations "serve[] as the cornerstone for" all of Plaintiff's claims against Canzius and Temple, the Court lacks the power to hear them and will dismiss all claims under Rule 12(b)(1). *See Germany v. Power 105.1 Radio*, 790 F. App'x 442, 443 (3d Cir. 2019) (complete dismissal under substantiality doctrine appropriate where allegations are entirely attenuated and insubstantial, and all claims are based on defunct factual allegations).

The remaining claims against Defendants Google, Medium, and Academia are similarly attenuated, insubstantial, and frivolous. *See Allen*, 276 F. App'x at 199. They are based entirely on Plaintiff's own fanciful belief that three independent technology platforms with no apparent connection to Plaintiff, Temple, or Canzius all conspired to suppress his speech about his mathematical "discoveries." *See generally* ECF No. 12. Plaintiff offers no explanation of how or when this purported coordination took place, much less what motive they would have to take orders about how to run their platforms from Temple. *See supra* at 4-6. This is exactly the type of "fantastic scenario" the substantiality doctrine is designed to capture. *See DeGrazia*, 316 F. App'x at 173; *see also VanLoan*, 2021 WL 3630481, at *2 (dismissing claims of conspiracy as

obviously frivolous where plaintiff failed to allege facts indicating any connection between the defendants).

Indeed, courts in this Circuit routinely dismiss claims under the substantiality doctrine alleging far-reaching conspiracy theories that obviously lack any factual basis. *See, e.g., Dorval v. Sapphire Vill. Condo. Ass'n*, No. 16cv050, 2020 WL 902524, at *2-3 (D.V.I. Feb. 25, 2020), *aff'd sub nom. Dorval v. Sapphire Vill. Condo. Owners Ass'n*, 838 F. App'x 8 (3d Cir. 2020) (dismissing claims under substantiality doctrine where plaintiff alleged conspiracies by multiple federal agencies to follow and harass him because he is a black man from Haiti); *Allen*, 276 Fed. App'x at 198-99 (affirming in part district court's dismissal of conspiracy claims under substantiality doctrine where plaintiff alleged "widespread conspiracy to permit and assist in the" torture of Christian inmates); *Mina v. Chester Cnty.*, 679 F. App'x 192, 195 (3d Cir. 2017) (upholding district court's dismissal under substantiality doctrine where allegations were "outlandish" in nature, including alleging a far-reaching conspiracy to plant devices on plaintiff and cover up the death of an FBI agent's wife); *VanLoan*, 2021 WL 3630481, at *2 (dismissing plaintiff's Section 1983 claims under substantiality doctrine because alleged factual basis for claims involved an "obviously fantastical conspiracy theory" based on plaintiff's suspicions). The Court will accordingly dismiss all claims against Google, Medium, and Academia under Rule 12(b)(1).

## IV. CONCLUSION

The Court lacks the power to hear cases that are wholly insubstantial and obviously without merit. Plaintiff's claims are nothing more than fantastic scenarios and lack any arguable factual basis. Thus, the Court will dismiss this action in its entirety. An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge